UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Roger J. Day, M.D.,

      Plaintiff,

  vs.

State of Minnesota; Minnesota
Board of Medical Practice; and
Steven I. Altchuler, M.D., Ph.D;
Alfred V. Anderson, M.D., D.C.;
Hilda Bettermann; Rebecca Hafner,
M.D., Bradley S. Johnson, M.D.;
Kelli Johnson; Jerry Kaplan; Ernest
W. Lampe II, M.D.; James Langland,
M.D.; Barbara LeTourneau, M.D.;
Allen Rasmussen; Kris Sanda;
Carl S. Smith, M.D.; and Jon V.
Thomas, M.D., in their personal
capacities and in their official
capacities as members of the
Minnesota Board of Medical
Practice,

      Defendants.   Civ. No. 05-2675 (MJD/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I.  Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Defendants' Motion to Dismiss the Plaintiff's Complaint or, in the alternative, for Summary Judgment, as well as the Plaintiff's cross-Motion for Summary Judgment.  A Hearing on the Motions was conducted on April 10, 2007, at which time, the Plaintiff appeared personally, and by Richard I. Diamond, Esq., and the Defendants appeared by Thomas C. Vasaly, Assistant Minnesota Attorney General.  For reasons which follow, we recommend that the Defendants' Motion for Summary Judgment be granted, and that the Plaintiff's cross-Motion be denied.

## II.  Factual and Procedural Background

In his Complaint, the Plaintiff Roger J. Day, M.D. ("Day"), contends that the Minnesota Board of Medical Practice ("the Board"), and its members -- in both their official and individual capacities -- have violated, and continue to violate, Title II of the Americans with Disabilities Act ("ADA"), by denying him a full and unrestricted medical license, because of his alleged disabilities.  He additionally contends that the Board's decisions, which relate to those restrictions, deprived him of Due Process,

Equal Protection, and assorted civil rights.  See, <u>Complaint</u>, at pp. 14-22, ¶¶42-90.
He also seeks relief under several State law theories, and an injunction, which would
"prohibit[] Defendant's [sic] restriction of Plaintiff's medical practice privilege."  <u>Id.</u>
at p. 23, ¶¶91-95.

By way of additional background, the Defendant State of Minnesota ("the
State") granted Day a license to practice medicine, and surgery, in 1990.  In May of
1990, Day was serving a psychiatric residency program at the University of Minnesota,
when a woman, who was suffering from depression, was referred to him for
psychotherapy treatment.  See, <u>State v. Day</u>, 501 N.W.2d 649, 650-51 (Minn. App.
1993).  Day treated the woman over the course of a year, until an "incident" occurred
on March 20, 1991, for which Day was convicted, after a Jury Trial, of Fourth Degree
Sexual Conduct, a violation of Minnesota Statutes Section 609.341.  <u>Id.</u>; see also, <u>Day</u>
<u>v. Miner</u>, 1998 WL 279229 at *1 (Minn. App., June 2, 1998), rev. denied (Minn., July
30, 1998).

In 1992, Day entered a Stipulation and Order with the Board, which imposed
restrictions on his license to practice medicine, including a prohibition on providing
direct patient care.  See, <u>Complaint</u>, at p. 4, ¶13; Exh. 15.  From 1992 through 1995,
Day was employed in the Hennepin County Medical Examiner's Office as an

Investigative Assistant, at which time his employment ceased, and he applied for full

Social Security, Minnesota Public Employees Retirement Association ("PERA"), and

insurance disability benefits.  See, <u>Administrative Law Judge ("ALJ") Finding of Fact</u>,

at ¶44, <u>Complaint</u>, Exh. 8, at p. 11.

After Day made several attempts to have the restrictions on his license removed,

a Complaint Review Committee ("Committee"), which was composed of several

members of the Board, held a conference on September 20, 2002, concerning the

matter of Day's medical license.  At that time, Day petitioned for a full reinstatement

of his practice privileges.  See, <u>Complaint</u>, at ¶10.  At the conference, the Committee

noted that Day's ability to practice medicine had been evaluated on four (4) separate

occasions, which included a then-recent report and recommendation from the

Behavioral Medicine Institute of Atlanta ("BMI").  See, <u>Transcript of September 20,</u>

<u>2002 Committee Meeting</u>, <u>Complaint</u>, Exh. 1, at pp. 1-6.

As a result of that conference, the Committee provided Day with three (3)

options from which to choose:  1) voluntary surrender of his license by an Order, with

a limited factual section, which would omit any discussion of the "sexual misconduct

because as [Day] mentioned, [the Committee] do[es] consider that and there is every

evidence that is not a current issue," and "this would be based on -- on -- on

- 4 -

disability," such that Day would be able to reapply for a license after completion of a residency program;  2) entry into a Stipulation and Order, which would contain an indefinite suspension, that would be lifted after Day received a positive evaluation from "either BMI or Rush," to the effect that Day was fit to practice medicine; or 3) initiation of formal administrative proceedings.  Id. at pp. 6-8.  Day was advised to consult with counsel, and subsequently, to inform the Committee of his decision.  Id. at pp. 13-14.

On September 26, 2002, Day wrote a letter to the Committee, in which he requested that the Committee enter a finding, which would provide that "there are no longer any grounds for discipline relative to the matter of the 1992 Stipulation," and that the Committee recommend that the restrictions on Day's license be lifted.  See, Complaint, Exh. 2.  Throughout the subsequent months, Day wrote to the Committee, the Board's Executive Director, and the Minnesota Office of the Attorney General ("OAG"), concerning his Petition for an Unconditional License.  See, Complaint, at ¶¶12-14.

On October 11, 2002, the Committee reviewed the correspondence that Day had provided, and denied:  1) Day's request for a recommendation that the restrictions on his license be removed; 2) his request for the Committee to contact BMI prior to

initiating a contested-case proceedings; and 3) his request for an extension of the twenty (20) day time-frame, in which Day was advised to sign a proposed Order.  See, Complaint, Exh. 5.

On December 11, 2002, the Board, through the Committee, initiated proceedings to determine whether Day should be subject to disciplinary action.  See, Notice of and Order for Prehearing Conference and Hearing, Complaint, Exh. 6.  The alleged grounds for disciplinary action were Day's "[i]nability to practice medicine with reasonable skill and safety to patients are a result of any mental condition," in violation of Minnesota Statutes Section 147.091, Subdivision 1(l).  Id. at p. 6.  Attorneys with the OAG represented the Committee throughout the administrative proceedings.  Id. at p. 7.

Day subsequently moved to dismiss the proceedings, and requested a Ruling that his was a "contested case," as defined under the Minnesota Equal Access to Justice Act, see, Minnesota Statutes Section 15.471, Subdivision 3, and that he was to be considered as a "party," as defined by Section 15.471, Subdivision 6.  The ALJ denied Day's Motion to Dismiss, and clarified that the proceedings constituted a "contested case," but that Day had yet to establish that he was a "party" for purposes

of Subdivision 6.   See,   <u>Ruling on Respondent's Motion to Dismiss and Motion for</u>

<u>Clarification of Status Under Equal Access to Justice Act</u>, <u>Complaint</u>, Exh. 7.

After the conduct of a Hearing, the ALJ issued a Report, on December 10,

2004, which contained her Findings of Fact, Conclusions, Recommendation and

Memorandum, which determined that "[t]he Committee ha[d] not proven by a

preponderance of the evidence that [Day] [wa]s unable to practice medicine with

reasonable skill or safety to patients as a result of any mental or physical condition."

See, <u>Complaint</u>, Exh. 8, at p. 57. The ALJ recommended that "the [Board] not impose

disciplinary action against [the Plaintiff's] medical license."  <u>Id.</u> at p. 57.

On April 9, 2005, the Board convened a Hearing, at which the OAG argued on

behalf of the Committee, which took exception to the ALJ's Findings and

Conclusions.   One of the arguments, which was presented by the OAG to the Board,

was that it should find that Day was unable to practice medicine because he had been

deemed disabled by the Social Security Administration ("SSA"), and received

disability benefits.   See, <u>Transcript of April 9, 2005 Hearing</u>, <u>Complaint</u>, at ¶19; Exh.

9, at pp. 8-13, 31-33.   In response, counsel for Day argued that the OAG's "reasoning

amounted to illegal discrimination, because a Social Security Disability determination

d[id] not create a presumption of inability to exercise skill and judgment in the conduct of one's profession." Complaint, at ¶19; Exh. 9.

On June 17, 2005, the Board issued its Findings of Fact, Conclusions, and Order. See, Findings of Fact, Conclusions, and Order ("Board's Order"), Complaint, Exh. 10. In the Board's Order, the Board accepted some of the ALJ's Findings of Fact, and rejected the ALJ's recommendations, and "drew some different conclusions and inferences based on substantial evidence in the record." Id. at pp. 2, 12. The Board noted, in its supporting Memorandum, that, "[a]lthough most evaluators no longer believe he is at great risk for sexual misconduct, as time has progressed the evaluating professionals have made determinations that [Day] suffers from mental conditions which significantly impact his perception of the world and which will prevent him from practicing medicine with reasonable skill and safety." Id. at p. 17. The Board's Order recounts the evaluations of a number of Day's treating medical sources, and evaluators, in detail. Id. at pp. 17-24.

In light of Cleveland v. Policy Management Systems Corp., 526 U.S. 795 (1999), the Board also considered whether Day's claims of disability, for which he had received PERA, and SSA disability benefits, conflicted with his contention that he was able to safely practice medicine. See, Board's Order, at pp. 25-29. As recounted

previously, the Committee had argued that Day should be judicially estopped from claiming that he should receive an unconditional medical license.  See, <u>Complaint,</u> Exh. 10, at p. 27.  In addressing the effect of his application for benefits, the Board's Order provides, in relevant part, as follows:

> In this case, the Board is unable to address the judicial estoppel issue raised by the Committee because the record in this proceeding does not contain clear and specific information concerning [Day's] original claim submissions to PERA and SSA, written decisions on eligibility from PERA and SSA, when disability determinations involving [Day] were made, whether the determinations were made after one or more hearings, or the precise bases upon which [Day] was awarded PERA or SSA disability benefits.
>
> In summary, [Day] has submitted reports to PERA and SSA that state he has an impairment that renders him totally disabled under the laws and rules of PERA and SSA and is receiving benefits from both.  [Day] testified he plans to continue to claim a disability that entitles him to SSA and PERA benefits.  At the same time, [Day] argues that he is entitled to an unconditional license.  These positions are inconsistent and contradictory.  [Day] cannot have it both ways.  When [Day] applies for and receives PERA and SSA disability benefits, by his actions he acknowledges he has a mental condition of such severity that it significantly impairs his ability to practice medicine with reasonable skill and safety.  These admissions **and the record viewed in its entirety** compel the Board to deny [Day's] request for an unconditional license.

<u>Id.</u> at pp. 28-29 [emphasis added].

- 9 -

The Board concluded that Day was in violation of Minnesota Statutes Section 147.091, and the Board was "persuaded by the comprehensive evaluations of the Committee's experts and the consistency of their recommendations that due to a mental disability, [Day] is not currently able to safely practice medicine pursuant to an unconditional license." Id. at p. 25.   However, the Board removed several of the restrictions, and provided that Day could now treat patients directly, but only in a group practice setting, or in an accredited residency program. Id. at pp. 6-10.

Day requested, in three (3) letters sent during June, and July of 2005,  that the Board reconsider its decision.  See, Complaint, Exhs. 11-13.  On July 13, 2005, the Board denied the Plaintiff's request for reconsideration.  See, Order Denying Request for Reconsideration, Complaint, Exh. 14.  The Board reiterated that it relied upon "substantial evidence" in reaching its decision, and that its decision to allow Day to practice medicine, while under supervision, was internally consistent.   Id. at p. 3.  As to Day's claim that the Board improperly considered his application for, and receipt of, PERA and SSA benefits, the Board's Order provides, in relevant part:

> Finally, [Day] alleges that the Board incorrectly interpreted the law relating to [Day's] application for and receipt of Social Security and Public Employee Retirement Association ("PERA") benefits.  [Day] claims that the Board found him unable to practice medicine with

> reasonable skill and safety because he received these benefits. [Day] misunderstands the Board's Order. The Board did not base its decision that [Day] was unable to practice reasonable skill and safety on the mere fact that he receives benefits. In this proceeding, [Day] admitted that he applied for and receives benefits based on a claim that he is totally disabled under the laws and rules of the Social Security Administration and PERA. He also stated that he plans to renew his applications for benefits and receive them in the future. The Board found that [Day's] own admissions are **evidence** of an inability to practice medicine with reasonable skill and safety to patients.

Id. at p. 4 [emphasis added].

Subsequently, Day appealed the Board's decision to the Minnesota Court of Appeals, but he failed to do so in a timely fashion, and his Petition was dismissed. See, Complaint, at ¶23.

In his Complaint before this Court, Day alleges that the Board's decision violated Title II of the ADA, by denying him "the benefits of their services by reason of his disability." Id. at ¶46; see also, Title 42 U.S.C. §12132 ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."). He also argues that he was deprived of a property right or privilege -- an unrestricted medical license -- without notice and a fair opportunity to be heard, namely because of the Defendants

- 11 -

alleged violation of the holding in <u>Cleveland v. Policy Management Systems Co.</u>, supra, and that the State's process for investigating and restricting medical licenses is "inherently defective" in that the "investigators, prosecutors, and jurors," are all agents of the OAG. He further alleges that, pursuant to Title 42 U.S.C. §§1981(a), 1983, and 1985, the Defendants collectively violated his civil rights. Lastly, Day asserts a Minnesota State law claim under the Minnesota Human Rights Act, in addition to a breach of contract claim. As relief, he seeks monetary damages and an injunction -- namely, the removal of any restrictions on his medical license.

The Defendants argue that they are entitled to a dismissal of Day's claims, and that Day is precluded from asserting several of his causes of action, based upon the prior administrative proceedings; that the Defendants are immune from monetary damages; and that Day is not a "qualified individual" entitled to relief under the ADA. In turn, Day contends that the undisputed facts of this case entitle him to Summary Judgment, largely by restating and condensing his allegations, which were initially asserted in his Complaint. See, <u>Plaintiff's Memorandum</u>, <u>Docket No. 166</u>, at pp. 21-28.

III.  Discussion

A.    Standard of Review.  Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations.  See, Wallace v. DTG Operations, Inc., 442 F.3d 1112, 1118 (8th Cir. 2006), citing Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); Midwest Oilseeds, Inc. v. Limagrain Genetics Corp., 387 F.3d 705, 711 (8th Cir. 2004), cert. denied, 544 U.S. 977, 125 S. Ct. 1860 (2005).  Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue.  See, Smutka v. City of Hutchinson, 451 F.3d 522, 526 (8th Cir. 2006), citing Mayer v. Nextel W. Corp., 318 F.3d 803, 806 (8th Cir. 2003); Eide v. Grey Fox Technical Servs. Corp., 329 F.3d 600, 604 (8th Cir. 2003); Philip v. Ford Motor Co., 328 F.3d 1020, 1023 (8th Cir. 2003).  For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving party.  See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Planned Parenthood of Minnesota/South Dakota v. Rounds, 372

- 13 -

F.3d 969, 972 (8th Cir. 2004); <u>Fenney v. Dakota, Minnesota & Eastern R.R. Co.</u>, 327

F.3d 707, 711 (8th Cir. 2003).

As Rule 56(e) makes clear, once the moving party files a properly supported

Motion, the burden shifts to the nonmoving party to demonstrate the existence of a

genuine dispute.  In sustaining that burden, "an adverse party may not rest upon the

mere allegations or denials of the adverse party's pleading, but the adverse party's

response, by affidavit or as otherwise provided in this Rule, must set forth specific

facts showing that there is a genuine issue for trial." <u>Rule 56(e), Federal Rules of Civil</u>

<u>Procedure</u>; see also, <u>Anderson v. Liberty Lobby, Inc.</u>, supra at 256; <u>Eddings v. City</u>

<u>of Hot Springs, Ark.</u>, 323 F.3d 596, 602 (8th Cir. 2003).  Moreover, the movant is

entitled to Summary Judgment where the nonmoving party has failed "to establish the

existence of an element essential to that party's case, and on which that party will bear

the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, supra at 322; see also, <u>Forest</u>

<u>Park II v. Hadley</u>, 408 F.3d 1052, 1057 (8th Cir. 2005); <u>Mercer v. City of Cedar</u>

<u>Rapids</u>, 308 F.3d 840, 843 (8th Cir. 2002); <u>Hammond v. Northland Counseling Center,</u>

<u>Inc.</u>, 218 F.3d 886, 891 (8th Cir. 2000).  No genuine issue of fact exists in such a case

because "a complete failure of proof concerning an essential element of the nonmoving

party's case necessarily renders all other facts immaterial." <u>Celotex Corp. v. Catrett,</u>

supra at 323; see also, <u>Sallis v. University of Minnesota</u>, 408 F.3d 470, 474 (8th Cir. 2005); <u>Davis v. U.S. Bancorp</u>, 383 F.3d 761, 768 (8th Cir. 2004); <u>Bell Lumber and Pole Co. v. United States Fire Ins. Co.</u>, 60 F.3d 437, 441 (8th Cir. 1995).

      B.    <u>Legal Analysis</u>.

      1.    <u>Res Judicata</u>.   The Defendants contend that Day's  claims, which arise under Title II of the ADA, as well as portions of his Due Process claims, should be dismissed based on either issue preclusion, or collateral estoppel principles, as the Board found that Day was "unable to practice medicine with reasonable skill and safety to patients as a result of a mental or physical condition," and further found that Day was in violation of Minnesota  Statutes Section 147.091.  See, <u>Board's Order</u>, <u>Complaint</u>, Exh. 9, at p. 6; <u>Defendants' Memorandum of Law</u>, at pp. 9-13.   In response, Day argues that his claims were not previously litigated in the administrative proceedings.  See, <u>Plaintiff's Memorandum of Law</u>, at pp. 15-16.  We agree with the Defendants, at least as to certain aspects of Day's ADA, and Due Process claims.

      a.    <u>Standard of Review</u>.  "'Res judicata' is the term traditionally used to describe two discrete effects:  1) what we now call claim preclusion, which is a valid final adjudication of a claim precludes a second action on that claim or any part of it; and 2) issue preclusion, long called 'collateral estoppel," which traditionally

- 15 -

occurs where an issue of fact or law, actually litigated and resolved by a valid final judgment, binds the parties in a subsequent action, whether on the same or a different claim." Leonard v. Southwestern Bell Corp. Disability Income Plan, 341 F.3d 696, 701 (8th Cir. 2003), citing Thomas v. General Motors Corp., 522 U.S. 222, 233 n. 5 (1998).

"'Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" Gurley v. Hunt, 287 F.3d 728, 731 (8th Cir. 2002), quoting Allen v. McCurry, 449 U.S. 90, 94 (1980). "The test applied to determine whether res judicata bars litigation of a claim is: (1) whether the prior judgment was rendered by a court of competent jurisdiction; (2) whether the judgment was a final judgment on the merits, and (3) whether the same cause of action and same parties or their privies were involved in both cases." Id., citing De Llano v. Berglund, 183 F.3d 780, 781 (8th Cir. 1999); see also, Leonard v. Southwestern Bell Corp. Disability Income Plan, supra at 701; Canady v. Allstate Ins. Co., 282 F.3d 1005, 1014 (8th Cir. 2002); Black Clawson Co., Inc. v. Kroenert Corp., 245 F.3d 759, 762 (8th Cir. 2001); Lundquist v. Rice Memorial Hosp., 238 F.3d 975, 977 (8th Cir. 2001).

In determining the scope of preclusion, that a prior Minnesota Judgment will exact, we necessarily look to the governing law of Minnesota.  See, Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 375 (1985)(a Federal Court must first consider the law of the State in which a Judgment was rendered when determining the preclusive effect to be accorded that Judgment), reh'g denied, 471 U.S. 1062 (1985).  Under Minnesota law, "[a] judgment on the merits constitutes an absolute bar to a second suit for the same cause of action, and is conclusive between parties and privies, not only as to every other matter which was actually litigated, but also as to every matter which might have been litigated therein."  Dorso Trailer v. American Body & Trailer, 482 N.W.2d 771, 774 (Minn. 1992), quoting Mattsen v. Packman, 358 N.W.2d 48, 49 (Minn. 1984); see also, Sondel v. Northwest Airlines, Inc., 56 F.3d 934, 938 (8th Cir. 1995).

In effect, res judicata "is essentially a finality doctrine which dictates that there be an end to litigation."  Dorso Trailer v. American Body & Trailer, supra at 773-74, citing Federated Mutual Ins. Co. v. Litchfield Prec. Comp., Inc., 456 N.W.2d 434, 438 (Minn. 1990).  Accordingly, it is "well established in Minnesota that a party 'should not be twice vexed for the same cause, and that it is for the public good that there be

an end to litigation.'"  <u>Hauser v. Mealey</u>, 263 N.W.2d 803, 807 (Minn. 1978), quoting

<u>Shimp v. Sederstrom</u>, 233 N.W.2d 292, 294 (Minn. 1975).

In the context of the preclusive effect of a State Administrative Hearing, the

United States Supreme Court has held that, "when a state agency 'acting in a judicial

capacity * * * resolves disputed issues of fact properly before it which the parties

have had an adequate opportunity to litigate,' federal courts must give the agency's

factfinding the same preclusive effect to which it would be entitled in the State's

Courts."  <u>University of Tennessee v. Elliott</u>, 478 U.S. 788, 799 (1986), citing <u>United

States v. Utah Const. & Min. Co.</u>, 384 U.S. 394, 422 (1966).  Specifically, under

Minnesota law, for an agency decision to have preclusive effect, five factors must be

met:  1) the issue to be precluded must be identical to the issue raised in the prior

agency adjudication; 2) the issue must have been necessary to the agency adjudication

and properly before the agency; 3) the agency determination must be a final

adjudication subject to judicial review; 4) the estopped party was a party or in privity

with a party to the prior agency determination; and 5) the estopped party was given a

full and fair opportunity to be heard on the adjudicated issue.  See, <u>Peterson v.

Independent Sch. Dist. No. 811</u>, 999 F. Supp. 665, 671(D. Minn. 1998), citing <u>Falgren

v. State Bd. of Teaching</u>, 545 N.W.2d 901, 905 (Minn. 1996); <u>Moubry v. Independent</u>

School Dist. 696, Ely, Minn., 9 F. Supp. 2d 1086, 1109 n.11 (D. Minn. 1998);

Graham v. Special School Dist. No. 1, 472 N.W.2d 114, 116 (Minn. 1991); McKee

v. Ramsey County, 245 N.W.2d 460, 462 n.1 (Minn. 1976); see also, Erickson v.

Commissioner of Dept. of Human Services for State of Minn., 494 N.W.2d 58, 61

(Minn. App. 1992).

      b.    Legal Analysis.

      1)    The Plaintiff's ADA Claim.  We begin by noting that,

in the context of claims arising under Title II of the ADA, which address discrimination

in public services, Courts have generally found that administrative decisions, by State

Agencies, are to afforded preclusive effect.  See, Harris v. New York State Dept. of

Health, 202 F. Supp.2d 143, 172-73 (S.D.N.Y. 2002)(noting plaintiff's Title II ADA

claims, concerning injunctive remedy of reinstatement of his medical license, were

barred under doctrines of res judicata and collateral estoppel); see also, Alexander v.

Pathfinder, Inc., 91 F.3d 59, 62 (8th Cir. 1996)(finding administrative agency's

decision had preclusive effect to claim brought pursuant to Title III of ADA); Hason

v. Medical Board of the State of California, 177 Fed.Appx. 733, 734-45 (9th Cir.

2006)(finding California Medical Board's decision, which denied the plaintiff a

physician and surgeon's license, was given preclusive effect against the plaintiff's Title

II ADA claim under the doctrines of res judicata and collateral estoppel);  Johnson-Goeman v. Michigan Dept. of Commerce, 1995 WL 313707 at *5 (W.D. Mich., January 18, 1995)("Therefore, the Court concludes that the [administrative estoppel] doctrine applies to claims brought pursuant to both Section 504 of the Rehabilitation Act of 1973 and Subchapter II of the ADA.").[1]

Plainly, a comparison of the arguments that Day advanced in the prior Board proceeding, with those that are alleged here, demonstrates that he is attempting to relitigate the Board's previous decision in this Federal forum.   The primary issue, which was then before the Board, was whether Day had demonstrated an "[i]nability to practice medicine with reasonable skill and safety to patients as a result of any mental condition," as defined in Minnesota Statutes Section 147.091, Subdivision 1(l). See, Notice of and Order for Prehearing Conference and Hearing, Complaint, Exh. 6, at p. 6.  During the administrative proceedings, Day argued that he was disabled for purposes of the ADA, see, Complaint, Ex. 8, at ¶215, but that the disability did not

---

[1]As discussed by the Defendants, Day's citation to Pernice v. City of Chicago, 237 F.3d 783, 787 n. 5 (7th Cir. 2001), for the proposition that State administrative decisions have no preclusive effect, is inapposite, for there, the claim was brought pursuant to Title I of the ADA.  See, Defendant's Reply Memorandum, Docket No. 170, at pp. 1-2.

adversely affect his ability to practice medicine, and that the "Committee's handling of []his case" subjected the Board to liability for discrimination, pursuant to Title II of the ADA.  See, Request for Reconsideration, Complaint, Exh 12; see also, Transcript of Contested Case Hearing, Complaint, Exh 9., at pp. 16-18.

He further argued that the Committee's consideration of his receipt of disability benefits was not a significant impairment to his ability to practice medicine, and that any presumption of inability to perform work-related tasks was impermissible, pursuant to the United States Supreme Court's decision in Cleveland v. Policy Management Systems Corp., supra.   See, Day's Response to the Committee's Opposition to the Request for Reconsideration, Complaint, Exh. 13.

In denying Day's request for reconsideration, the Board determined that its Order, which restricted Day's license to practice medicine, was based on substantial evidence in the Record, which demonstrated that Day was unable to practice medicine with reasonable skill and safety, as a result of his mental disability, such that he should only be allowed to practice medicine while under direct supervision.  See, Order Denying Request for Reconsideration, Complaint, Exh. 14, at p. 3.  Moreover, the Board emphasized that it did not find his inability to practice medicine with reasonable skill and safety arose from "the mere fact that he receives benefits," but instead, it

found that his admissions of disability were "**evidence** of an inability to practice medicine with reasonable skill and safety to patients." Id. at p. 4 [emphasis added].

Day alleges that the Board's Order impermissibly placed restrictions on his license to practice medicine, and "denied [Day] the benefits of their services [i.e., an unrestricted medical license] by reason of his disability." Complaint, at ¶47. As noted in Day's Complaint, to pursue a cause of action, which arises under Title II of the ADA, requires that the claimant be a "qualified individual," as defined in Title 42 U.S.C. §12131(2). Id. at ¶44; see also, Randolph v. Rodgers, 170 F.3d 850, 858 (8th Cir. 1999)("To state a prima facie claim under the ADA, a plaintiff must show: 1) he is a person with a disability as defined by statute; 2) he is otherwise qualified for the benefit in question; and 3) he was excluded from the benefit due to discrimination based upon disability."), citing Title 42 U.S.C. §12131 et seq.

Section 12131(2) further specifies that, to fall within the definition of a "qualified individual," one must "meet[] the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." Under Minnesota law, an application for a license to practice medicine may be denied, or a physician may be subject to disciplinary action, such as receiving restrictions on

- 22 -

his or her license, if the applicant demonstrates an inability to "practice medicine with reasonable skill and safety to patients," such that the physician is adversely affected "as a result of any mental or physical condition." Minnesota Statutes Section 147.091, subdivision 1(l); see, Minnesota Statutes Section 147.02, Subdivision 1(h); Minnesota Statutes Section 147.091, Subdivision 1.

As previously recounted, we find the very same issue -- whether the Plaintiff was a qualified individual to receive an unrestricted license to practice medicine safely in light of a claimed mental disability -- was presented to the Board in Day's Motion to Reconsider, in his subsequent response to the Committee's opposition to the Motion to Reconsider, as well as in the entirety of the administrative proceedings. See, e.g., Transcript of Contested Case Hearing, Complaint, Exh 9., at pp. 16-18. There, the Plaintiff argued that his medical disability did not impact upon his ability to practice medicine safely, and that he was eligible to receive an unrestricted license. The same evidence, and Record, was presented to the Board, i.e., the opinions of the Plaintiff's evaluators and treating medical sources, during the administrative proceedings, as he asserts here. Accordingly, we find that Day's effort here is simply an attempt to relitigate the Board's previous decision in this Federal forum, and that the identical issue -- whether the Plaintiff was a "qualified individual" to receive an

unrestricted medical license because his mental disability assertedly posed no threat to the safety of patients  -- was raised, and resolved in the State administrative proceeding.

The other criteria for the application of preclusion are also present here, as to his ADA claim.   Whether Day's disability affected his ability to safely practice medicine, such that he was either qualified to practice medicine with an unrestricted license, or was subject to disciplinary action, was necessary to the Board's finding that it was "persuaded by the comprehensive evaluations of the Committee's experts and the consistency of their recommendations that due to a mental disability, [Day] is not currently able to safely practice medicine pursuant to an unconditional license." Board's Order, at p. 25.   The subsequent Order, which denied Day's request for reconsideration, and which reiterated the Board's conclusion that Day was unable to practice medicine safely without supervision, because of his disability, also addressed that same legal and factual issue, given Day's reliance on the requisites of Title II of the ADA.   Accordingly, as the Board necessarily made a finding as to Day's ability to practice medicine safely, in the absence of restrictions, we find that the issue of Day's eligibility to practice medicine was necessary to the Board's decision.

Moreover, each of the elements, which is essential to the application of collateral estoppel, is present here.   The Board's Order, and its subsequent denial of Day's Motion to Reconsider, were final and subject to judicial review.   Minnesota law provides that "[a]ny person aggrieved by a final decision in a contested case is entitled to judicial review of the decision," and that a Petition for Review "must be filed with the Court of Appeals and served on the agency not more than 30 days after the party receives the final decision and order of the agency."  See, <u>Minnesota Statutes Section 14.63.</u>   While the Plaintiff attempted to petition the Board's adverse final decision to the Minnesota Court of Appeals, that Court determined that his Petition was fatally untimely.  See, <u>Complaint</u>, at ¶23; <u>Declaration of Thomas Vasaly</u>, <u>Docket No. 128</u>, Ex. E.  Day took no further appeal from the decision of the Minnesota Court of Appeals.

As a consequence, Day was a party to the prior Board adjudication, and there is no doubt that he received a full and fair opportunity to litigate his claim in the administrative proceedings, where he:  1) appeared personally as well as with legal counsel; 2) filed multiple submissions arguing his position; 3) testified at the Hearing; and 4) was afforded the opportunity to object and submit arguments against any adverse decision to the Minnesota Court of Appeals.   "The question of whether a party had a full and fair opportunity to litigate a matter generally focuses on 'whether

- 25 -

there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties.'" State v. Joseph, 636 N.W.2d 322, 328 (Minn. 2001), quoting Sil-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1521 (10ᵗʰ Cir. 1990), citing, in turn, 18 Charles Allen Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure, §4423 (1981 and Supp. 2000).  Here, there is no suggestion that the Plaintiff was precluded from participating in the administrative proceedings which resulted in an adverse decision by the Board; or that the Plaintiff was not motivated to fully litigate his claim.

In sum, we find that all of the requisite elements are present, such that Day is precluded from arguing, in this forum, that he is entitled to relief as to his Title II ADA claim, since he had a full and fair opportunity to litigate that he was a "qualified individual" who should receive an unrestricted medical license, despite his claimed mental disability.  Accordingly, we recommend that his ADA claim be dismissed on res judicata, and collateral estoppel grounds.

2)    The Plaintiff's Due Process Claim Premised on a "Presumption" Arising From His Receipt of Disability Benefits.

The Defendants also contend that Day should be is precluded from reasserting his Due Process claims, which he initially raised in the administrative proceedings before the Board.  In his opposition briefing, the Plaintiff fails to address the preclusive effect of the administrative proceedings on his Due Process claims.  However, as noted by the Court in Peterson v. Independent School District No. 811, supra at 671-672, Minnesota Courts have found that, "in the agency context 'the doctrine of res judicata applies to administrative proceedings when the agency is acting in a judicial capacity and resolves disputed issues properly before it, which the parties have had an adequate opportunity to litigate.'"  Id., quoting Surf and Sand, Inc. v. Gardebring, 457 N.W.2d 782, 787 (Minn. App. 1990), rev. denied (Minn., September 20, 1990).

Given the Record presented, we conclude that Day's Due Process claim, as to any presumption arising from his receipt of disability benefits, was litigated before the Board, and resolved, such that he is precluded from relitigating those claims in this forum.  Specifically, Day asserted that the Board had impermissibly applied a presumption that his receipt of disability benefits demonstrated that he lacked the

- 27 -

essential skills to hold an unrestricted medical license, and contended that the Board's decision violated the holding in <u>Cleveland v. Policy Management Systems Corp.</u>, supra.   See, <u>Complaint</u>, Exhs. 11-13.   In response, the Board addressed Day's contention, noted the Supreme Court's holding in <u>Cleveland v. Policy Management Systems Corp.</u>, supra, and clarified that it did not apply any presumption, but instead, weighed Day's admission, that he planned to continue asserting a disability for purposes of receiving benefits, as a necessary part of the evidence to be considered in reaching a conclusion, based upon the entirety of the evidence in the Record as a whole.   See, <u>Board's Order</u>, <u>Complaint</u>, Exh. 10, at pp. 27-29; <u>Order Denying Request for Reconsideration</u>, <u>Complaint</u>, Exh. 14, at p. 4.

As was true of Day's Title II ADA claim, he presented the same facts and argument to the Board, throughout the administrative proceedings, and the Board addressed his concerns in its Order, as well as in its denial of his Motion for Reconsideration.   Day could have appealed those rulings to the Minnesota Court of Appeals, but he failed to timely do so, and accordingly, "the application of res judicata principles to his procedural due process * * * claims would not be unfair or inequitable."   <u>Peterson v. Independent School District No. 811</u>, supra at 672.

- 28 -

Accordingly, we find that Day is precluded from asserting that procedural Due Process claim again in this forum, and we recommend that the claim be dismissed.

       2.    <u>Equal Protection Claims</u>.    The Fourteenth Amendment's Equal Protection Clause requires Government actors to treat persons, who are similarly situated, alike.  See, <u>City of Cleburne v. Cleburne Living Center, Inc.</u>, 473 U.S. 432, 439 (1985); see also, <u>Creason v. City of Washington</u>, 435 F.3d 820, 823 (8th Cir. 2006).   In his Third and Fourth Causes of Action, Day asserts that the "Defendants have acted and conspired to deprive Plaintiff of equal protection," and argues that the "inherently defective and inequitable process of investigating and restricting a medical license in the State of Minnesota, which , upon information and belief, is not applied equally and uniformly to all categories of physicians and/or others who are granted professional licensures by the State of Minnesota."  <u>Complaint</u>, at ¶58.

However, Day has not alleged that he is a member of a suspect class, or that a fundamental right has been infringed, and accordingly, Day's claim is subject to rational basis review.  See, <u>Klingler v. Director, Dept. of Revenue, State of Mo.</u>, 455 F.3d 888, 894 (8th Cir. 2006)("Disparate treatment based on disability is subject to rational basis review."), citing <u>City of Cleburne v. Cleburne Living Ctr., Inc.</u>, supra at 446; <u>Gillmore v. County of Douglas, State of Nebraska</u>, 406 F.3d 935, 937 (8th Cir.

2005); see, e.g., <u>Thompson v. Ellenbecker</u>, 935 F. Supp. 1037, 1041 (D.S.D. 1995). "Under this standard, legislation is presumed valid if the classification drawn by the legislation is rationally related to a legitimate state interest." <u>Red River Service Corp. v. City of Minot, North Dakota</u>, 146 F.3d 583, 590 (8th Cir. 1998), citing <u>City of Cleburne v. Cleburne Living Center, Inc.</u>, supra at 440; see also, <u>Klingler v. Director, Dept. of Revenue, State of Mo.</u>, supra at 894. Accordingly, Day is obligated to "negate 'every conceivable basis which might support the classification.'" <u>Id.</u>

Day simply asserts that the Board, and the State, do not apply the process of investigating, and restricting a medical license, uniformly upon all categories of physicians, or professional licenses. See, <u>Complaint</u>, at ¶58. However, as we have noted, he does not demonstrate that he is a member of a suspect class, that he has been subjected to particular animus, or that he has a fundamental right to an unrestricted medical license. Notably, under a rational basis review, Day has not challenged the rationale of the Board to place restrictions on people with disabilities so that they practice medicine safely, other than his statement, in conclusory terms, that the Defendants generally conspired against him to deny him an **unrestricted** medical license.

However, the Board's "primary responsibility and obligation * * * is to protect the public." Minnesota Statutes Section 147.001. Accordingly, "[i]n the interest of public health, safety, and welfare, and to protect the public from the unprofessional, improper, incompetent, and unlawful practice of medicine," the Board is empowered to "govern the granting and subsequent use of the license to practice medicine." Id. According to the Board, it is "charged with protecting the public from the unprofessional, improper, incompetent, and unlawful purpose," and it made its individualized decision, to place restrictions on Day's license, in order to protect the public. See, Board's Order, Complaint, Exh. 9, at p. 11.

Since Day has not presented any evidence, that he was treated dissimilarly from other applicants who were similarly situated, and has not advanced any argument which would undermine the basis for the Board's placement of restrictions on his license, we find that Summary Judgment, in favor of the Defendants, is appropriate on the Equal Protection claim as well.

3.   <u>Due Process Claims</u>.[2]   To the extent that Day's Due Process

claims are not precluded by the proceedings before the Board, we conclude that the

Defendants are entitled to a dismissal of those claims, as a matter of law.   In his

Complaint, Day asserts that his Due Process rights were violated because:   1) the

Defendants' stated reason for restricting his medical license violated the express

holding of <u>Cleveland v. Policy Management Systems Corp.</u>, supra; 2) the Board "re-

prosecuted the original suspension, then re-cast the issue by falsely finding [a] new

basis for restriction, on a new and different statutory ground;" 3) the Board conferred

secretly with evaluators, and designated documents as "not to be shared with Dr.

Day;"; and 4) the State's process for "investigating and restricting medical licenses is

inherently defective," as "the investigators, prosecutors, and jurors are all agents of the

same entity -- the state attorney general," since the Board serves as both the

---

[2]Since Day failed to timely appeal the Board's decision which undergirds his current claims of Due Process violations, we have great difficulty in comprehending how he can claim a denial of Due Process, when he failed to exhaust the process which was available to him.  See, e.g., <u>Campbell v. St. Mary's Hospital</u>, 252 N.W.2d 581, 586 (Minn. 1977)("Having failed to exhaust his procedural remedies, [the plaintiff] cannot now complain that his treatment was unjust."), citing <u>Suckle v. Madison General Hospital</u>, 499 F.2d 1364 (7th Cir. 1974).  Nonetheless, we consider, in detail, Day's denial of Due Process contentions.

prosecutor, as well as the decision-maker, in entering a final decision.  See, Complaint,

at ¶51.[3]

In determining whether a plaintiff has properly asserted a claimed violation of

Due Process, the first inquiry focuses on whether there is a liberty or property interest

which the defendants have denied to the plaintiff.  See, Kentucky Dept. of Corrections

---

[3]Insofar as Day claims that the Defendants violated his substantive Due Process, he has failed to demonstrate a fundamental right to an unrestricted medical license, or that the Board's actions "shocked the conscience."  Undoubtedly, the Constitution embodies a concept of substantive Due Process, which prevents Government actors from engaging in conduct that shocks the conscience, or that interferes with rights which are implicit in the concept of ordered liberty.  See, United States v. Salerno, 481 U.S. 739, 746 (1987); see, Moran v. Clarke, 296 F.3d 638, 643 (8th Cir. 2002), quoting Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir. 1998); Brown v. Nix, 33 F.3d 951, 953 (8th Cir. 1994).

Substantive due process claims are, therefore, analyzed under two tests.  First, the Government is forbidden from infringing upon certain "fundamental" liberty interests to any degree -- no matter what process is provided -- unless the infringement is narrowly tailored to serve a compelling governmental interest.  See, Weiler v. Purkett, supra at 1051, citing Reno v. Flores, 507 U.S. 292, 113 S.Ct. 1439, 1447 (1993).  Second, the Government's conduct somehow "must shock the conscience or otherwise offend our judicial notions of fairness, or must be offensive to human dignity."  Id. citing Weimer v. Amen, 870 F.2d 1400, 1405 (8th Cir. 1989).

In view of Day's failure to advance any argument, that any of his substantive Due Process rights were violated, or demonstrate his "fundamental right" to an unrestricted medical license, or that the Board's decision "shock[s] the conscience," we recommend that the Defendants be granted Summary Judgment as to any substantive Due Process claim that can be inferred, however obliquely, from his Complaint.

- 33 -

v. Thompson, 490 U.S. 454, 460 (1989); Swipies v. Kofka, 419 F.3d 709, 715 (8th

Cir. 2005)("To establish a procedural due process violation, a plaintiff need not only

show a protected interest, but must also show that he or she was deprived of that

interest without sufficient process, i.e., without due process.").   Once we determine

that a liberty or property interest has been implicated -- that is, one of constitutional

dimension -- then we must determine what process was due before the governmental

entity could deprive the plaintiff of that interest.   See, Cleveland Bd. of Edu. v.

Loudermill, 470 U.S. 532, 541 (1985).   "Although the underlying substantive interest

is created by 'an independent source such as state law,' federal constitutional law

determines whether the interest rises to the level of entitlement' protected by the Due

Process Clause." Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 9 (1978);

see also, Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1030 (1992).

Here, Day's claim survives the first prong of analysis, as Minnesota Courts have

generally found that a "license to practice medicine is a property right deserving

constitutional protection, including due process." Humenansky v. Minnesota Bd. of

Medical Examiners, 525 N.W.2d 559, 566 (Minn. App. 1994), rev. denied (Minn.,

February 14, 1995), citing Greene v. McElroy, 360 U.S. 474, 492 (1959); Fosselman

v. Comm'r of Human Servs., 612 N.W.2d 456, 461 (Minn. App. 2000); cf. In re

- 34 -

<u>Psychology License of Appleman</u>, 2002 WL 1544069, at *3 (Minn. App., July 16, 2002).

As to Day's allegation, that the Defendants applied an improper presumption in restricting his medical license, to the extent that the claim is not precluded by the prior administrative proceedings, we find the claim fails on its merits. Our conclusion is based on the Plaintiff's misconstruction of the holding in <u>Cleveland v. Policy Management Systems Corp.</u>, supra.   There, a plaintiff obtained Social Security benefits as a result of her disability, and subsequently brought an ADA lawsuit against her former employer.   <u>Id.</u> at 798-799. In her prior application for benefits, the plaintiff had averred that she was "disabled," and was "unable to work" as a result of her disability.   <u>Id.</u>   Accordingly, the Supreme Court considered whether "the law erects a special presumption that would significantly inhibit an SSDI recipient from simultaneously pursuing an action for disability discrimination under the [ADA]."   <u>Id.</u> at 797.

The Court found that "the two claims [i.e., a claim for SSDI benefits, and an ADA claim] do not inherently conflict where courts should apply a special negative presumption * * * because there are too many situations in which an SSDI claim and

an ADA claim comfortably exist side by side." Id. at 802-803.  However, the Supreme

Court also noted, in relevant part:

> When faced with a plaintiff's previous sworn statement
> asserting "total disability" or the like, the court should
> require an explanation of any apparent inconsistency with
> the necessary elements of an ADA claim. To defeat
> summary judgment, that explanation must be sufficient to
> warrant a reasonable juror's concluding that, assuming the
> truth of, or the plaintiff's good-faith belief in, the earlier
> statement, the plaintiff could nonetheless "perform the
> essential functions" of her job, with or without "reasonable
> accommodation."

Id. at 807; see also, Murphey v. City of Minneapolis, 358 F.3d 1074, 1078 (8th Cir.
2004)("[A] plaintiff cannot simply ignore the apparent contradiction that arises from
the plaintiff's sworn assertion in an application for disability benefits that he or she is
unable to work."); Lane v. BFI Waste Systems of North America, 257 F.3d 766, 769
(8th Cir. 2001)("However, where an employee has sworn in an application for disability
benefits that he is unable to work at any job, he must proffer a sufficient explanation").

Here, Day contends that the Defendants improperly applied a presumption, in

determining that his license should be restricted as a result of his claims for disability

benefits.  However, there is no evidence, in this Record, that the Defendants applied

any presumption that Day's receipt of disability benefits precluded him from the

unrestricted practice of medicine.

Rather, as explained in the Board's Order, as well as in its denial of the

Plaintiff's request for reconsideration, the Board considered the Plaintiff's application

- 36 -

for, and his stated intention to continue his receipt of benefits, as **evidence** of his impaired ability to practice medicine in an unrestricted manner.  See, Complaint, Exh. 14, at p.  ("The Board did not base its decision * * * on the mere fact that he receives benefits," and "[t]he Board found that Respondent's own admissions are evidence of an inability to practice medicine with reasonable skill and safety to patients."); Board's Order, Complaint, Exh. 10 ("In this case, the Board is unable to address the judicial estoppel issue raised by the Committee").  Notably, Day was afforded, and he took advantage of, an opportunity to explain why the receipt of disability benefits did not reflect an inability to practice medicine without direct supervision.  See, Board's Order, at pp. 25-29. Accordingly, we find that the Defendants did not apply an improper presumption, based upon the Plaintiff's receipt of disability benefits, and therefore, Day is not entitled to relief on his Due Process claim, and we recommend dismissal of that aspect of Day's Complaint.

With respect to Day's allegation, that he was denied Due Process when the Defendants sought a "new and different statutory ground" for placing restrictions on his medical license, Complaint, at ¶51(d), we find that he was provided the statutory basis of the charges against him -- namely, Minnesota Statutes Section 147.091, Subdivision 1(l) -- prior to the Hearing.  See, Notice of Hearing, Complaint, Exh. 6,

at p. 6. The Board, in issuing its Order that placed restrictions on Day's license, cited the very same statute in rendering its decision. See, Board's Order, Complaint, Exh. 10, at p. 6. Accordingly, we find that Day has failed to demonstrate that any Due Process violation resulted from the Board's issuance of restrictions pursuant to Minnesota Statutes Section 147.091, Subdivision 1(l).

As to Day's assertion, that the Board "conferred secretly with evaluators and treated case documents as 'not to be shared with Dr. Day,'" Complaint, at ¶51(c), we find that the Plaintiff has offered no evidence to support the assertion. The Defendants, in support of their Motion, urge that Day has failed to articulate, in either his Complaint, or in his various filings, what documents were withheld from him, or which conferences, or information from those conferences, were conducted by the Board in secret. Day does not offer any factual showing, legal authority, or other cogent response, to the Defendants' argument.

Of course, "[a] [claim] founded on speculation or suspicion is insufficient to survive a motion for summary judgment." Yarborough v. DeVilbiss Air Power, Inc., 321 F.3d 728, 730 (8th Cir. 2003), quoting Nat'l Bank of Commerce v. Dow Chem. Co., 165 F.3d 602, 610 (8th Cir. 1999). "While we are required to make all reasonable inferences in favor of the nonmoving party in considering summary judgment, we do

so without resort to speculation." <u>Twymon v. Wells Fargo & Co.</u>, 462 F.3d 925, 934 (8th Cir. 2006), citing <u>Hitt v. Harsco Corp.</u>, 356 F.3d 920, 923-24 (8th Cir. 2004). Simply put, Day "must substantiate [his] allegations with more than 'speculation, conjecture, or fantasy' in order to survive summary judgment." <u>Marquez v. Bridgestone/Firestone, Inc.</u>, 353 F.3d 1037, 1038 (8th Cir. 2004), citing <u>Putman v. Unity Health Sys.</u>, 348 F.3d 732, 733-34 (8th Cir. 2003).  However, Day offers no salient **facts** to support his claim that the Board conferred secretly with evaluators, or improperly precluded him from accessing documents that were generated in the administrative proceedings, but merely offers his conjecture, and surmise, and that is insufficient to survive Summary Judgment.

Even if certain documents were withheld from Day's purview -- whatever those documents were -- he has failed to demonstrate any entitlement to those supposed documents, and offers no legal argument, that is supported by a factual showing, that he was entitled to review those documents, or had a right to be a party to any supposed conferences.  Absent from his showings is a citation to any portion of the Board's decision, or to its denial of his request for reconsideration, that relies upon evidence to which he was not privy, or conferences in which he did not participate.

We are mindful that Day's Complaint alleges that Rush Behavioral ("Rush") provided a "highly unfavorable report" (the "Rush Report"), which was provided to the Board, but was withheld from him, for some period in 1996.  See, <u>Complaint</u>, at ¶31.  However, it appears that Day drew that circumstance to the attention of the ALJ, at the time of the initial Hearing, and argued that the opinions provided in the Rush Report were ill-considered.  See, <u>Complaint</u>, Exh. 8, at ¶¶76-85.  Moreover, the Plaintiff's counsel further addressed the merits of the opinions, as contained in the Rush Report, at his Hearing before the Board in 2005.  See, <u>Complaint</u>, Exh. 9, at p. 11.

While Day alleges that he was precluded from accessing the contents of the Rush Report, for some period during 1996, he subsequently "discover[ed] the Rush report through legal means," and was able to review the Report, and present argument that it should be entitled to less weight.  See, <u>Complaint</u>, Ex. 8, at ¶84.  Accordingly, he cannot now argue that the Board, in its proceedings in 2005, impermissibly relied upon "secret" evidence, since he had access to the same evidence from some period of time, and employed that evidence in his presentation at the Board's Hearing.  More importantly, Day did not argue, in any of his letter submissions, or in his Motion for Reconsideration, that the Rush Report, or any evaluations contained therein, were

impermissibly included in the Record.  See, <u>Complaint</u>, Exhs. 11-13.  Accordingly, we find that the Defendants are entitled to Summary Judgment on this aspect of the Plaintiff's Due Process claim as well.

Lastly, the Plaintiff contends that the Board's  process for investigating medical licenses is "inherently defective," as the "decision-making power rests not with an independent judiciary, but with the same office that serves as the prosecutor of the licensee throughout the proceedings." <u>Complaint</u>, at ¶51(d).  As a preliminary matter, we note, that there is no inherent constitutional infirmity, in the conduct of an administrative proceeding, which arises simply because an agency both investigates and adjudicates a contested case.  See, <u>Withrow v. Larkin</u>, 421 U.S. 35, 55 (finding no Due Process violation where State Board of Medical Examiners combined investigative and adjudicative functions, without any express showing of bias, in initiating contested case proceedings to suspend the petitioner's medical license); <u>Smith v. Sorensen</u>, 748 F.2d 427, 436 (8th Cir. 1984), cert. denied, 471 U.S. 1054 (1985); <u>Nevels v. Hanlon</u>, 656 F.2d 372, 376-77 (8th Cir. 1981); <u>Heritage Pub. Co. v. Fishman</u>, 634 F. Supp. 1489, 1502 (D. Minn. 1986).

Moreover, administrative decision makers, absent some particularized showing to the contrary, are presumed to act in a fair and impartial manner.  See, <u>Withrow v.</u>

Larkin, supra at 55 ("The mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the board members at a later adversary hearing," and "[w]ithout a showing to the contrary, state administrators 'are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.'"), quoting United States v. Morgan, 313 U.S. 409, 421 (1941); Marler v. Missouri State Board of Optometry, 102 F.3d 1453, 1457 (8th Cir. 1996).  Indeed, our Court of Appeals has noted that, "[w]ithin the context of public administrative law and procedure, a claimant or litigant is not denied a constitutionally guaranteed fair hearing before an impartial tribunal simply because the agency factfinders or decisionmakers may have had some prior knowledge or even preliminary participation in the case or even though they may have formed some tentative ideas as to the merits of the controversy about to be decided."  Hirrill v. Merriweather, 629 F.2d 490, 496 (8th Cir. 1980), citing Withrow v. Larkin, supra at 55.

Therefore, a party seeking to rebut the presumption of impartiality must demonstrate a factual basis revealing bias or prejudice.  See, Richmond v. Fowlkes, 228 F.3d 854, 858 (8th Cir. 2000)("Where administrative matters are concerned we must proceed on the assumption that the administrators are 'entitled to a presumption

of honesty and integrity unless actual bias, such as personal animosity, illegal prejudice, or a personal or financial stake in the outcome can be proven.'"), quoting Ikpeazu v. University of Nebraska, 775 F.2d 250, 254 (8th Cir. 1985); Gordon v. Hansen, 168 F.3d 1109, 1114 (8th Cir. 1999);Marler v. Missouri State Board of Optometry, supra at 1457; see also, Oswald v. Waterloo Bd. of Educ., 2003 WL 22284654, at *8 (N.D. Iowa, September 22, 2003)("An allegation of bias on the part of administrative adjudicators 'must overcome a presumption of honesty and integrity in those serving as adjudicators'"), quoting Withrow v. Larkin, supra at 46-47; Dell v. Bd. of Educ., 32 F.3d 1053, 1066 (7th Cir. 1994).

Given these precepts, Day's claims necessarily fail.  He has not provided any affirmative evidence, as he must, to overcome the presumption that the Board acted with integrity in investigating and adjudicating the controversy before it.  As to his claim that the "investigators, prosecutors, and jurors are all agents of the same entity," and that "the final decision-making power rests not with an independent judiciary, but with the same office that serves as the prosecutor," we find the Plaintiff has not provided evidence to support his claim of a Due Process violation, and note that the Supreme Court has found no inherent infirmity arising from a Board serving as both

the investigator and adjudicator in restricting, or suspending, a practitioner's medical license.  See, <u>Withrow v. Larkin</u>, supra at 55.

Moreover, none of the individual Defendants participated in the proceedings as both the "investigator," and "adjudicator," as the Committee members, who had initially investigated Day, played no role in the Board's ultimate decision.  The Notice of Hearing, which advised Day of the initiation of the administrative proceedings, provides, in relevant part, as follows:

> Pursuant to Minn. State §§214.10 and 214.103 (1998), the decision to initiate this proceeding was made by the Complaint Review Committee and not by the Board as a whole.  Peter Krieser, Assistant Attorney General, is representing the Complaint Review Committee in this matter.  After the hearing, the record and the administrative law judge's report will be forwarded to the Board to make a final decision.  Members of the Complaint Review Committee will not participate in the Board's deliberations in this matter.  In addition, the Board will be advised by an attorney other than Peter Krieser.

<u>Complaint</u>, Exh. 6, at pp. 6-7.

Moreover, the Board's decision was made without any direct input from the parties involved in investigating Day, or the attorney who had previously advised the Committee.  At the Hearing, the Board disclosed that:

> Following the argument the Complaint Review Committee and it's attorney, Dr. Day and his attorney and any Board

- 44 -

staff who may have assisted the Committee will be asked to
excuse themselves from the room.  The Board will then
deliberate on the case.  The parties will be notified of the
Board's decision in writing as soon as possible.

\*        \*        \*

Finally, if any of you [the Board members] do not believe
you can give an unbiased opinion, that you cannot reach a
fair and impartial decision, you need to disqualify yourself.
In addition, any Board members consulted during the
course of the investigation of the case or who assisted in
the prosecution or defense will be disqualified.  Board
members who have an actual bias or a direct current or
former financial or professional relationship with the doctor
should disqualify themselves.

See, Transcript of Hearing, Complaint, Exh. 9, at pp. 4, 39.

In its Order, the Board noted that three (3) members of the Board were members of

the Committee which had "reviewed this matter, and, therefore, did not participate in

deliberations and did not vote in this matter."  Board's Order, Complaint, Exh. 10, at

p. 1.

Without any evidentiary showing, and no substantive argument to the contrary,

and given the Supreme Court's holding in Withrow v. Larkin, supra, we recommend

that Summary Judgment, on this aspect of Day's claim, be granted in favor of the

Defendants.  See, Minnesota State Bd. of Medical Examiners v. Schmidt, 292 N.W.

255, 257 (Minn. 1940)("The argument that the action of the board was either in

process or result a denial of due process * * * is without merit * * *[, and the] charge is the frequent one made against administrative boards, that they act both as prosecutors and judges," and "[e]nough answer for this case is that appellant was given ample notice of the nature of the charges against him, with an opportunity for hearing.").

4.    <u>Immunity</u>.  Should Day's Title II ADA claims not be precluded by res judicata, or collateral estoppel, we find, in the interests of completeness, that Day has failed to assert a viable Title II ADA claim for monetary damages, since the claims are barred by official immunity.  Moreover, the Board members are immune from suit, in their individual capacities. We address each respective application of immunity, in turn.

a.    <u>Official Capacity ADA Claims</u>.   The Defendants contend that the State, the Board, and the individual  members of the Board in their official capacities, cannot be found liable -- due to immunity from suit under the Eleventh Amendment -- for monetary damages arising from Day's Title II ADA Claim.   In response, Day contends that Congress has generally abrogated immunity under Title II of the ADA.   For reasons that follow, however, we find that Congress did not

validly abrogate a State's Eleventh Amendment immunity, under the circumstances presented by Day.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." <u>United States Constitution, Amend. XI</u>. For over a century, the Amendment has been understood to stand for the proposition that a non-consenting State is immune from Federal Court suits by its **own** citizens, as well as by citizens of another State. See, <u>Kimel v. Florida Board of Regents</u>, 528 U.S. 62, 72 (2000); <u>Seminole Tribe of Florida v. Florida</u>, 517 U.S. 44, 54 (1996); <u>Hans v. Louisiana</u>, 134 U.S. 1, 15 (1890)(such suits were "not contemplated by the constitution when establishing the judicial power of the United States").

In effect, the Eleventh Amendment immunizes from suit a "state agency or official * * * if immunity will 'protect the state treasury from liability that would have had essentially the same practical consequences as a judgment against the State itself.'" <u>Hadley v. North Arkansas Community Technical College</u>, 76 F.3d 1437, 1438 (8th Cir. 1996), cert denied, 519 U.S. 1148 (1997), quoting <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 123 n. 34 (1984); see also, <u>Regents of the</u>

University of California v. Doe, 519 U.S. 425 (1997); Edelman v. Jordan, 415 U.S. 651 (1974); Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464 (1945), overruled on other grounds, Lapides v. Board of Regents of University System of Georgia, 535 U.S. 613, 614-15 (2002).

Over the years, the Supreme Court has fashioned a patchwork of exceptions to the Eleventh Amendment's limitation on Federal Court jurisdiction, as that doctrine was initially expressed in Hans v. Louisiana, supra.  Among those exceptions, the United States Supreme Court has noted that, "insofar as Title II [of the ADA] creates a private cause of action for damages against the States for conduct that **actually** violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."  United States v. Georgia, --- U.S. ---, 126 S. Ct. 877, 882 (2006)(finding paraplegic inmate could seek monetary damages for ADA and Fourteenth Amendment claims against State, which claimed sovereign immunity)[emphasis in original]; see also, Tennessee v. Lane, 541 U.S. 509, 517 (2004)(Title II of the ADA was valid abrogation of claims of sovereign immunity, as to disabled persons alleging a denial of fundamental right of access to Court proceedings).  The Supreme Court has clarified that the Courts are to determine, on a claim-by-claim basis, whether Congress permissibly abrogated the State's claim of sovereign immunity.  See, United States v.

- 48 -

Georgia, supra at 882; Klingler v. Director, Dept. of Revenue, State of Mo., supra at 892.

Our analysis begins by noting that Day has not argued that the State, or its agencies, have consented to suit by private individuals, under Title II of the ADA. See, e.g., Thomas v. FAG Bearings Corp., 50 F.3d 502, 506 (8th Cir. 1995)("As a general matter, only unmistakable and explicit waiver by the state itself qualifies as a waiver of Eleventh Amendment immunity."). Therefore, our analysis is limited to whether Congress has validly abrogated Minnesota's sovereign immunity to Title II ADA claims.

Congress may only abrogate Eleventh Amendment immunity when acting pursuant to a constitutional provision which empowers it to abrogate. The Supreme Court has expressly identified Section 5 of the Fourteenth Amendment, as empowering Congress to abrogate a State's Eleventh Amendment immunity, as that Section provides that "Congress shall have the power to enforce, by appropriate legislation, the provisions of [that amendment]." Atascadero State Hospital v. Scanlon, 473 U.S. 234, 238 (1985), citing Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976); Florida Prepaid Postsecondary Educ. Expense Bd. v. College Savings Bank, 527 U.S. 627, 637 (1999);Klingler v. Director, Dept. of Revenue, State of Mo., supra at 893.

In keeping with the rationale of <u>Georgia</u>, we identify, at the threshold, the nature of Day's claim.  We have previously determined that the Defendants are entitled to Summary Judgment on Day's constitutional claims -- namely, his  Equal Protection and Due Process claims -- and accordingly, "[b]ecause the conduct that the plaintiff[] allege[s] does not, in itself, violate the constitution, under <u>Georgia</u>, 126 S. Ct. at 878, we must determine 'whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." <u>Klingler v. Director, Dept. of Revenue, State of Mo.</u>, supra at 894; see, <u>United States v. Georgia</u>, supra at 882.

As previously noted, the Supreme Court has expressly provided only two (2) specific areas where Title II of the ADA validly abrogates a State's sovereign immunity, namely: 1) suits implicating a "fundamental right," such as accessibility to judicial services; and 2) suits in which the asserted conduct is, in itself, unconstitutional.  See, <u>United States v. Georgia</u>, supra at 881; <u>Tennessee v. Lane</u>, supra at 531, 533-34; <u>Klingler v. Director, Dept. of Revenue, State of Mo.</u>,  supra at 893.  Assuming <u>arguendo</u>, that the Defendants' activities, in their official capacities, actually violated Title II of the ADA, in the absence of a constitutional violation, we turn to the analysis provided by the Supreme Court, in <u>City of Boerne v. Flores</u>, 521

U.S. 507, 520 (1997).  Our Court of Appeals has described the applicable inquiry as

follows:

> Because the conduct that the plaintiffs allege does not, in
> itself, violate the constitution, under <u>Georgia</u>, 126 S. Ct. at
> 878, we must determine "whether Congress's purported
> abrogation of sovereign immunity as to that class of
> conduct is nevertheless valid." We are addressing
> Congress's ability to enact "prophylactic" legislation
> designed to deter unconstitutional conduct, and thus there
> must be "congruence and proportionality between the injury
> to be prevented or remedied and the means adopted to that
> end." <u>Boerne</u>, 521 U.S. at 520, 117 S.Ct. 2157. Courts
> conduct a three-part inquiry to determine whether Congress
> met the <u>Boerne</u> requirement:  They identify "the
> constitutional right or rights that Congress sought to
> enforce" when it enacted the law being reviewed, <u>Lane</u>, 541
> U.S. at 522, 124 S. Ct. 1978, decide whether Congress
> "identified a history and pattern" of unconstitutional
> conduct by the states, see [Board of Trustees of University
> of Alabama v.] Garrett[,] [531 U.S. 356,] 368, 121 S.Ct.
> 955 [(2001)], and, if so, determine whether the abrogation
> constitutes a proportionate response to the constitutional
> violation, see College Sav. Bank, 527 U.S. at 646, 119 S.Ct.
> 2199.

<u>Klingler v. Director, Dept. of Revenue, State of Mo.</u>, supra at 894

As to the first step of the analysis, we consider Title II of the ADA as a whole, rather

than as to specific sections of the legislation.  <u>Id.</u> at 896, discussing <u>Tennessee v.</u>

<u>Lane</u>, supra at 529-33, and <u>Board of Trustees of University of Alabama v. Garrett</u>,

supra at 372-73; see also, Perry v. Missouri Dept. of Corrections, 2007 WL 892460, at *4 (E.D.Mo., March 21, 2007).

As further explained by our Court of Appeals, the Supreme Court has held "that Title II sought to enforce a variety of basic constitutional guarantees, including the fourteenth amendment's prohibition on irrational disability discrimination and some of the rights protected by the due process clause," and that "[t]he court's decision in Lane that Title II targeted a pattern of unconstitutional conduct forecloses the need for further inquiry [on the second prong of the Boerne analysis.]" Klingler v. Director, Dept. of Revenue, State of Mo., supra at 896, citing Tennessee v. Lane, supra at 522-23, and Association for Disabled Ams., Inc. v. Florida Int'l Univ., 405 F.3d 954, 958 (11th Cir. 2005).

As a result, our analysis necessarily turns on whether the provisions of Title II of the ADA are "'congruent and proportional' to the rights that it seeks to enforce," and "in light of the specific rights implicated by the case before [us]." Id., citing Tennessee v. Lane, supra at 530-31; see, City of Boerne v. Flores, supra at 519-20. In the context of an ADA claim, which challenged Missouri's imposition of a small fee for a State-issued windshield parking placard, our Court of Appeals advised that "[it] do[es] not think that the rights and remedies that Title II creates are an appropriate

means of enforcement of the equal protection rights of disabled people." Klingler v. Director, Dept. of Revenue, State of Mo., supra at 896.  The Court further stated that, "as to the category of claims involving rational discrimination based on disability, Title II of the ADA is not an appropriate exercise of Congress's power under §5 of the fourteenth amendment." Id. at 897.

Similarly here, we find no constitutional infirmity, irrational discrimination, or animus, in the Board's decision. The restrictions placed upon Day's medical license resulted from his mental disability, as the Board found that his disability would impact upon his ability to safely practice medicine, such that the public is endangered by the potential for the unsafe, or incompetent, practice of medicine.[4]  Given the Board's authority to place restrictions on those who practice medicine, an authority that necessarily must discriminate between those persons with a mental disability that impairs that practice, and those who do not, we conclude that the authority given is rational, and we conclude that any attempt by Congress to abrogate the State's sovereign immunity is neither congruent, nor proportional, to the rights Congress seeks to enforce.

---

[4]We make no express independent finding that the Plaintiff's practice of medicine would be unsafe or incompetent, and simply defer to the findings of the Board, which is uniquely qualified to make such a determination.

As our Court of Appeals has explained, "[t]he fact that the ADA's scheme forbids [the rational discrimination] convinces us that, rather than seeking to enforce the constitution's guarantee against irrational discrimination based on disability, Congress was seeking to redefine the scope of protection offered by the Constitution," and "[b]ecause 'Congress does not enforce a constitutional right by changing what the right is,'" Klingler v. Director, Dept. of Revenue, State of Mo., supra at 896-97, quoting City of Boerne v. Flores, supra at 519, we find that passage of Title II of the ADA does not validly abrogate the State's sovereign immunity, as to its ability to place reasonable restrictions on persons, who have a mental disability, to practice medicine. Accordingly, we recommend that, even if Day's ADA claims are not precluded by the res judicata effect of the prior administrative proceedings, the State, Board, and other Defendants, who have been sued in their official capacity, are entitled to sovereign immunity, and Summary Judgment, on that basis is appropriate.

   b.    Individual Immunity Claims.    As a preliminary matter, we note that Title II of the ADA does not authorize suits against officers in their individual capacities, and accordingly, the Board members, who have been sued in their individual capacities, are entitled to a dismissal of those claims, as a matter of law. See, Randolph v. Rodgers, 253 F.3d 342, 348 (8th Cir. 2001)("We agree that the

public-entity limitation precludes ADA claims against state officials in their individual capacities."), citing <u>Alsbrook v. City of Maumelle</u>, 184 F.3d 999, 1005 n. 8 (8th Cir. 1999); <u>Valder v. City of Grand Forks</u>, 217 F.R.D. 491, 494 (D.N.D. 2003); see also, <u>J.S. v. East End School Dist.</u>, 2007 WL 1029559, at *11 (E.D. Ark, April 3. 2007).

Further, Day's individual capacity claims against each of the Board Members are also barred by the doctrine of judicial immunity.  Our Court of Appeals has recently held that individual members of State Medical Boards are entitled to absolute immunity from suit.  See, <u>Buser v. Raymond</u>, 476 F.3d 565, 568-69 (8th Cir. 2007). "[O]fficials performing quasi-judicial actions are entitled to absolute immunity."  <u>Id.</u> at 568, citing <u>VanHorn v. Oelschlager</u>, 457 F.3d 844, 847 (8th Cir. 2006); see also, <u>Butz v. Economou</u>, 438 U.S. 478, 507 (1978).  The pertinent analysis, in determining whether individual Board members are entitled to quasi-judicial immunity, "turns on a number of factors," including:

> (a) the need to assure that the individual can perform his [or her] functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

<u>Id.</u> at 568, quoting <u>Krueger v. Lyng</u>, 4 F.3d 653, 656 (8th Cir. 1993).

- 55 -

Furthermore, "[e]very court of appeals that has addressed the issue has concluded that members of a state medical disciplinary board are entitled to absolute quasi-judicial immunity for performing judicial or prosecutorial functions."   Id. at 568-69, quoting Ostrzenski v. Seigel, 177 F.3d 245, 249 (4th Cir.1999)(collecting cases); but see, DiBlasio v. Novello, 344 F.3d 292, 297-302,  (2nd Cir. 2003), cert. denied 541 U.S. 988 (2004)(finding no entitlement to absolute immunity).

Day advances no argument in opposition to the application of quasi-judicial immunity to the Board members in their individual capacities.   Moreover, we find that each of the factors, which weighed in favor of granting absolute immunity, as discussed in Buser v. Raymond, supra at 570-572, are present here.  The need to assure that the Board can function to effectively protect the public, by placing appropriate restrictions on practicing physicians, without the threat of  harassment or intimidation by disgruntled or litigious parties, weighs in favor of absolute immunity. Id. at 570.  As we have observed, the administrative proceedings contained sufficient procedural safeguards, since Day was "permitted to call witnesses, present evidence, testify, obtain a decision, and appeal to the state [appellate] court."  Id.

Moreover, the Board made findings of fact, and conclusions of law, after an independent review of the entire record.  Day has made no showing that the Board was

tainted by political influence, and the case was designated a "contested case," such that he was fully aware, or should have been, that it was an adversarial process. Lastly, Day had the ability to subject the Board's decisions to appellate review in the Minnesota State Courts, but he failed to do so in a timely manner.  Since all of the factors, which weighed in favor of absolute immunity in Buser v. Raymond, supra at 570-72, are present here, we recommend that the Board members are entitled to absolute immunity, in their individual capacities, and that those claims be dismissed, as to them, as a matter of law.

> 5.    Other Federal Civil Rights Claims.   In addition to his asserted Equal Protection, and Due Process claims, that have been brought pursuant to Section 1983, Day also asserts that the Defendants intentionally deprived him of his Civil Rights, under Title 42 U.S.C. §§1981(a), and 1985.

In order to establish a prima facie case, under Title 42 U.S.C. §1981, the plaintiff must show that (1) he is a member of a racial minority, (2) the defendant intended to discriminate against him on the basis of race, and (3) the discrimination concerned an area enumerated by the statute.   See, Williams v. Lindenwood University, 288 F.3d 349, 355 (8th Cir. 2002).   Day's Complaint is devoid of any allegation that he was denied any legal rights on the basis of intentional, racial

discrimination.  As a consequence, he is entitled to no relief against the Defendants

under Section 1981, and we recommend that the claim be dismissed.

Day does assert that the Defendants "conspired" against him, and he seeks

relief, pursuant to Title 42 U.S.C. §1985, as asserted in his Complaint.   See,

Complaint, at ¶¶58, 63, and 64.  However, his Complaint does not allege a meeting of

the minds amongst the alleged conspirators, and Day has failed to demonstrate any

evidence of a conspiracy; therefore, he had failed to establish a claim under Section

1985.  See, Genosky v. Minnesota, 244 F.3d 989, 993-94 (8th Cir. 2001)("We agree

with the district court that [the plaintiff] has not set forth any evidence in the record

from which a jury could reasonably conclude that [the defendants] conspired to

deprive the Plaintiff of h[is] civil rights."), citing Larson v. Miller, 76 F.3d 1446, 1454

(8th Cir. 1996); see also, McDowell v. Jones, 990 F.2d 433, 434 (8th Cir. 1993); Wallin

v. Minnesota Dept. of Corrections, 974 F. Supp. 1234, 1240 (D. Minn. 1997)(merely

alleging that two (2) or more persons deprived a plaintiff of his constitutional rights is

in itself insufficient to raise a genuine issue of conspiracy); Occhino v. Lannon, 150

F.R.D. 613, 621 (D. Minn. 1993)("In the absence of any factual assertion that there

was an unlawful meeting of the minds amongst the Defendants to deprive the Plaintiff

of his constitutional rights, the conspiracy claim under Section 1985(3) should be

dismissed for failure to state a claim upon which relief can be granted."), aff'd, 19 F.3d 23 (8th Cir. 1994), cert. denied, 513 U.S. 840 (1994).

Beyond omitting any allegation, in his Complaint, that the Defendants agreed to deprive him of his rights, or that there was a meeting of the minds, Day does not discuss, let alone cite legal authority, which would support a cause of action under Section 1985. Furthermore, having found that all of Day's alleged constitutional violations are without merit, there is no underlying constitutional violation upon which a conspiracy claim could survive -- assuming that Section 1985 even provided a remedy for the type of claim that Day has asserted. As such, Day has failed to state a viable Section 1985 conspiracy claim, and therefore, we recommend that dismissal as to this claim granted.

6. <u>State Law Claims</u>. As our Court of Appeals recently explained, in <u>Gilson v. Weber</u>, 433 F.3d 642, 647 (8th Cir. 2006):

> Under 28 U.S.C. §1367(c)(3), a court may "decline to exercise supplemental jurisdiction over a claim * * * [if] the district court has dismissed all claims over which it has original jurisdiction." Congress unambiguously gave district courts discretion in 28 U.S.C. §1367(c) to dismiss supplemental state law claims when all federal claims have been dismissed, and there is no basis to find an abuse of discretion here. See Labickas v. Arkansas State University,

78 F.3d 333, 334 (8th Cir. 1996); McLaurin v. Prater, CO-1,
30 F.3d 982, 985 (8th Cir. 1994).

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims." Barstad v. Murray County, 420 F.3d 880, 888 (8th Cir. 2005), quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988).

Here, we have found no violation of the ADA, or of Day's Equal Protection, Due Process, or any other of his civil rights under Federal law, and we have recommended that those claims be dismissed, or that Summary Judgment be entered, in favor of the Defendants.  As a consequence, we further recommend that the District Court decline to exercise supplemental jurisdiction over Day's purely State law claims.

NOW, THEREFORE, It is --

RECOMMENDED:

1.     That the Defendants' Motion to Dismiss the Complaint, or in the alternative, for Summary Judgment [Docket No. 125] be granted, as to the Plaintiff's ADA, Equal Protection, Due Process, and other Federal civil rights claims.

2.     That the Plaintiff's State law claims be dismissed, without prejudice, pursuant to Title 28 U.S.C. §1367(c)(3).

3.     That the Plaintiff's cross-Motion for Summary Judgment [Docket No. 165] be denied.

Dated: July 18, 2007                     s/Raymond L. Erickson
                                         Raymond L. Erickson
                                         CHIEF U.S. MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than August 3, 2007,** a writing which specifically identifies those portions of the Report to which

objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than August 3, 2007,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.